# In the United States Court of Federal Claims

No. 09-883C
(Bid Protest)
(Filed Under Seal: July 19, 2010)[1]
(Reissued: July 28, 2010)

* * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| **DIVERSIFIED MAINTENANCE** | * | |
| **SYSTEMS, INC.,** | * | |
| | * | **Post-award Bid Protest;** |
| **Plaintiff,** | * | **Small Business HUBZone** |
| | * | **Set-aside; Discovery; Depositions;** |
| | * | **Subpoenas; Supplementation of** |
| **THE UNITED STATES,** | * | **the Administrative Record.** |
| | * | |
| **Defendant,** | * | |
| | * | |
| **and** | * | |
| | * | |
| **RAASS BROTHERS, INC.,** | * | |
| | * | |
| **Intervenor.** | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

John C. Dulske, Dulske & Gluys, P.C., 10500 Heritage Blvd., San Antonio, TX, for Plaintiff; Joan Kelley Fowler Gluys and Bryan Kost, Dulske & Gluys, and Timothy M. Willardson, Salt Lake City, UT, Counsel.

Joan S. Swyers, U. S. Department of Justice, 1100 L Street, NW, 8th Floor, Washington, D.C., for Defendant.

Michael H. Payne, Cohen, Seglias, Pallas, Greenhall & Furman, PC, 30 South 17th St., Philadelphia, PA 19103, for Intervenor-Defendant; Joseph A. Hackenbracht and Craig A. Schroeder, Of Counsel.

---

[1] This opinion was issued under seal on July 19, 2010. The Court invited the parties to submit proposed redactions by July 26, 2010. No redactions having been received, the Court publishes this opinion in toto, errata corrected.

## OPINION AND ORDER GRANTING
## PLAINTIFF'S MOTIONS FOR DISCOVERY

**WILLIAMS**, Judge.

In this post-award bid protest, Plaintiff challenges the award of a HUBZone set-aside contract for the construction of family housing at the Army's Dugway Proving Ground in Utah. Plaintiff alleges that the awardee, Raass Brothers, Inc. ("RBI"), was not eligible for award because it was not a qualified HUBZone small business contractor as it did not have its principal office in a HUBZone at the time of offer and award in September 2009.

This matter comes before the Court on Plaintiff's motions to supplement the Administrative Record ("AR") and take discovery. Plaintiff seeks discovery to elucidate where RBI's principal place of business was located at the time of offer and award. To put it mildly, there is much confusion in the current record as to where, in fact, RBI's principal place of business was during the relevant timeframe. There are four different potential locations in play. RBI claims that between February 2004, and September 2009, it continuously maintained its principal office in a HUBZone on a property known as "Jack's Farm" in Tooele, Utah. RBI claims to have moved its principal office to Provo, Utah, on September 1, 2009. However, RBI did not list either the Provo address or Jack's Farm in its proposal, which was submitted on September 10, 2009. Instead, RBI listed a third HUBZone address, 192 S 100 E, Tooele, Utah ("the 192 Tooele address"), in its offer. In three submissions accompanying its proposal, RBI listed a fourth address in Lehi, Utah ("the Lehi address"), which is not in a HUBZone.

Plaintiff seeks to supplement the administrative record with two affidavits of Jack VanGrimbergen, the owner of Jack's Farm. In the first affidavit, Mr. VanGrimbergen testified that RBI did not conduct business from Jack's Farm, and that the lease for Jack's Farm was backdated by five years. Plaintiff also seeks depositions of the landlords of three properties -- Jack's Farm, the Provo address, and the Lehi address -- to ascertain if and when RBI leased and occupied those properties. Finally, Plaintiff seeks the deposition of Stan Raass, Vice President of RBI, to probe the location of RBI's principal place of business, and seeks documents from all deponents bearing on these issues.

Given the uncertainty and inconsistencies in this record regarding the location of RBI's principal office at the time of offer and award and the fact that this location is dispositive in ascertaining whether RBI was a qualified HUBZone small business contractor eligible for award here, such discovery is clearly warranted. As such, the Court grants the limited discovery requested.

## Background[2]

On August 7, 2009, the Army Corps of Engineers ("Corps") issued solicitation number W91236-09-R-0042, a HUBZone set-aside for a $65 million Single Award Task Order Contract ("SATOC"), for the construction of family housing at the Army's Dugway Proving Ground in Utah.  AR 1, 276.  The contract had a base period of one year plus four one-year option periods.  AR 274, 276.

On May 27, 2009, RBI was "proposed for decertification" by SBA on the ground that it was no longer located in a HUBZone following a site visit by SBA.  AR 157.[3]  As SBA's Business Development Specialist Nancy Byerly, reported in her site visit report:

> Raass Brothers Inc. is <u>not</u> located in a HUBZone.  This firm is also an 8(a) firm and BDS [SBA Business Development Specialist] has been to firm's principle [sic] location (Lehi) and can verify that the firm has <u>moved</u> from 505 S. Brenda Way, Tooele, UT 84074 @ least 2½ years ago.  Also [included] in package is Utah Corporations Business Entity Search which shows firm is in Lehi.  Recommend that firm be decertified from HUBZone Program.

AR 132 (emphasis in original).[4]  On September 2, 2009, because RBI had not responded to the SBA's proposed decertification letter, the firm was decertified.  AR 157.  SBA's letter proposing RBI's decertification is not in the record.

Plaintiff and RBI were the only offerors that submitted timely offers in response to the Corps' solicitation on September 10, 2009.  AR 2, 475.  In its offer, RBI listed the 192 Tooele address, represented that it was a qualified HUBZone small business concern, and indicated that no material change in its principal office had occurred since it was last certified as HUBZone-qualified by SBA on January 18, 2006.  AR 2, 20; <u>see</u> AR 158.  However, in three documents accompanying its offer, RBI listed the Lehi address which is not in a HUBZone.  AR 7, 43, 46.  Along with the 192 Tooele address in its offer, RBI listed its Lehi phone and fax numbers.  AR 2, 165-67; <u>see also</u> AR 7, 77, 98, 139.

---

[2]   This background is derived from the parties' pleadings, motion papers, and the Administrative Record.

[3]   The administrative record reflects that SBA made several site visits to RBI's facilities in 2009: in April or May, SBA visited the Lehi address, AR 128, 132-33; on November 5, SBA visited both the 192 Tooele address and the Lehi address, AR 148-50; and on November 23, SBA visited the Provo address.  AR 146-47.

[4]   In this action, RBI never claimed to have had an office at the referenced Brenda Way address.  Rather, for the period before it moved from Brenda Way -- two and one-half years prior to this site visit -- pre-December 2006, RBI claims its principal office was at Jack's Farm.  AR 196 ("From 2004 until September 2009 our principle [sic] office was located at [Jack's Farm].").

On September 11, 2009, SBA "reversed" its decertification decision, effective April 2, 2002,[5] stating:

> This firm was proposed for decertification on 27 May 2009. However, [RBI] claims to have not received the proposed decertification letter. Decision is reversed to allow the firm time to respond to the proposed decert letter. According to the Utah District Office, they actually did not perform a site visit and based information on previous knowledge and the fact this firm was a former 8(a) firm, location in BDMIS [SBA's Business Development Management Information System], and in CCR [the government's Central Contractor Registration database] the same (not in a HUBZone). This information was corroborated with the State of Utah. However, the firm maintains the principle [sic] office is at another location. They need to respond why. LMS.

AR 157. By virtue of this "reversal" of the decertification to allow RBI more time to respond, RBI's HUBZone certification was in effect restored.

On September 28, 2009, the Corps awarded the contract to RBI.

As of October 14, 2009, the Lehi address was the sole address listed on RBI's website homepage, its Utah Department of Commerce listing, and its Utah contractor's license. AR 87, 90, 93.[6]

On October 14, 2009, Plaintiff filed a protest with the Contracting Officer ("CO") alleging that RBI did not meet the requirements for SBA certification as a qualified HUBZone small business concern because RBI's principal office was not in a HUBZone. AR 75-76. That same day, Plaintiff sent Mr. Roy Cook to perform a site visit at the 192 Tooele address. Mr. Cook testified in an affidavit that once inside the building at 192 Tooele, he was told that there was no construction company at that address, only "an environmental company." AR 102. As reflected in photographs included in Plaintiff's October 14, 2009 protest, there was a large sign identifying "Santa Rita Environmental," but no other companies, at the 192 Tooele address. AR 122-23.

On October 20, 2009, the Corps issued a stop-work order, and on October 21, 2009, the CO forwarded the protest to SBA for adjudication. AR 51.1.

---

[5]  The record does not reflect why SBA's reversal of the decertification was effective, nunc pro tunc, some seven years earlier in April, 2002.

[6]  On September 17, 2009, RBI's "main address" in its SBA profile was updated to replace the Lehi address with the 192 Tooele address. AR 80, 139. As of September 25, 2009, RBI's physical and mailing addresses in the government's Central Contractor Registration database were both updated to list the 192 Tooele address. AR 1132, 128.

On November 5, 2009, SBA conducted a site visit at the 192 Tooele address, and SBA Business Development Specialists Nancy Byerly and Patricia Fewkes reported:

> [this location] was a house and when [SBA] knocked on door no one responded. Sign out front stated that an environmental firm was at this location. Walked around property and saw no signs stating that the firm was here.

AR 148. The SBA Business Development Specialists' report continued:

> [RBI] contacted the SBA HUBZone office in DC after it received the intent to decertify the firm's HUBZone status stating that they had a Tooele location. From that point on the CCR system was changed to reflect the new [192 Tooele] address. . . . Mr. Raass told Mr. Sanchez [of SBA] that this is the location where his employees report in the mornings to work. . . . It was agreed that once [RBI] sent [its] documentation to Mr. Sanchez that the Utah District Office would be willing to perform a site visit. Mr. Sanchez has not responded to a follow-up email asking about the status of this firm.

AR 149 (emphasis in original).[7] Thus, according to the site visit report, at the time RBI's decertification was under consideration in September 2009, RBI was apparently representing to SBA that its principal place of business was at the 192 Tooele address.

Ms. Byerly further stated in her report that, according to Central Contractor Registration records as of April 17, 2009, the firm's address was in Lehi, which is not in a HUBZone. AR 149.[8] The report concluded: "[b]ased upon the information gathered, [the SBA Business Development Specialist] is forwarding a copy of this report to the [Inspector General's] office for possible fraud investigation." AR 150.[9] On that same date -- November 5, 2009 -- Ms. Byerly also visited the Lehi address. AR 148. She noted that although the RBI sign remained out front, the office was vacant, with no furniture or office equipment, and had "mail piled up on the floor." AR 148-49.

---

[7] The record does not include RBI's "contact," referenced in this report, with SBA's HUBZone office in Washington, D.C. or with Mr. Sanchez. It is not clear how or when RBI "received [SBA's] intent to decertify the firm's HUBZone status," as indicated in this report. Id.

[8] On November 3, 2009, RBI's entry in the government's Central Contractor Registration database listed the Provo address as RBI's mailing address, but the 192 Tooele address as its physical address. Compare AR 162 with AR 1132. As of this date, RBI's entry in SBA's profile contained the 192 Tooele address. AR 167.

[9] Plaintiff's in-house counsel, Mr. Willardson, also filed a complaint with SBA's Inspector General ("IG"). TRO Hr'g Tr. 36-37, Dec. 24, 2009; Interv.-Def.'s Am. Resp. to Pl.'s Mot. Suppl. AR Ex. 3. The record does not indicate whether SBA's IG initiated a fraud investigation or what its current status is. TRO Hr'g Tr. 37, Dec. 24, 2009.

By letter dated November 5, 2009, SBA informed RBI that Plaintiff had presented evidence that RBI's principal office was not at the 192 Tooele address, but at the Lehi address, and requested supporting documents from RBI demonstrating that its principal office was in a HUBZone at the time of offer and award.  AR 174-75.  SBA sent this letter to RBI's Lehi fax number.

On November 6, 2009, SBA decided to "hold off" on its Program Examination of RBI.[10] In a November 6, 2009 email to Brenda Washington of the HUBZone office, Leo Sanchez, Area Director at SBA's HUBZone office, wrote:

> I think . . . that we have a protest on this firm [RBI].  The firm was proposed for decertification pursuant to a 2009 PE [Program Examination]. The firm responded requesting more time, twice.  I have granted but expect to hear from them shortly.

AR 125.   Nothing in the record indicates that RBI ever responded to SBA's proposed decertification.

In a subsequent email that same day, Ms. Washington responded, "I have sent the site visit to Chris who is handling this protest."  Later that day, Mr. Sanchez wrote to Christopher R. Clarke, "I am prepared to have the protest supersede the [Program Examination] we were working on for this firm."  Mr. Clarke responded:

> Thanks.  It would be best to hold off on the [Program Examination] because if the protest is sustained the firm will be decertified.  No need to do the work twice if we don't have to.

AR 124-26.  Thus, it appears that SBA abandoned its decertification proceeding or program examination of RBI in light of the protest Plaintiff had filed with the CO on October 14, 2009, which was apparently pending before another SBA office.  See Tr. 16, Apr. 15, 2010.  Under 48 C.F.R. § 19.306(c), an offeror must submit its protest to the CO, and the CO must then forward the protest to the SBA's Associate Administrator for the HUBZone program in Washington, D.C. Under other SBA regulations, a Program Examination is conducted by SBA field staff or others designated by the SBA's Director Office of HUBZone.  13 C.F.R. § 126.400.  The site visit reports of April and November 5, 2009, and supporting documentation were forwarded to Mr. Sanchez, the HUBZone Office Area Director, who was apparently performing RBI's Program Examination and to Christopher R. Clarke, apparently the SBA attorney handling the protest. AR 124-28.

In response to SBA's November 5, 2009 fax requesting information, RBI submitted leases signed by Stan Raass for Jack's Farm and the Provo address, both of which are in HUBZones.  AR 196, 198, 199-208, 209, 210-15.  In a cover letter dated November 13, 2009,

---

[10]   Under SBA regulation, 13 C.F.R. § 126.500, a small business concern seeking to maintain its HUBZone status must recertify its continued eligibility to SBA every three years.  The effective date of RBI's most recent recertification was January 18, 2006.  AR 158.

Stan Raass stated that Jack's Farm was RBI's principal office from 2004 until September 2009, and that the Provo office was RBI's "central office" as of September 1, 2009.  AR 196.  Mr. Raass stated that the Lehi office was a "small office used by [him] as a satellite office and a place where confidential information was received.  [He] live[d] in Lehi and it was convenient. It was a month to month lease[,] and no documents were signed."  AR 196.  With respect to the 192 Tooele address, RBI stated: "in August of 2009 [RBI] entered into a verbal agreement with Don Lily to lease and move our office" to the 192 Tooele address, which is shared with another business, Santa Rita Inc.  AR 196.

In addition to the leases for Jack's Farm and the Provo address, RBI also provided the following documents:

- A quote of $19,500 for "clearing & grubbing for new parking pad" at a "Sanpete County Property" location, given by RBI on September 1, 2009, and accepted on September 7, 2009, by Alan Hone.  This quote lists RBI's Provo address at the top. AR 217.

- An employee list and a cover letter by Stan Raass.  In the cover letter, RBI represented that the 10 employees on the accompanying list were full-time, permanent employees of RBI on both September 10, 2009, and on September 30, 2009.  AR 218-19.[11]  These documents do not indicate where each person worked.

- Two payroll summaries labeled "September 6-12, 2009" and "September 27 through October 3, 2009," respectively.  Contrary to the dates in their titles, these two summaries each indicate "Week of October 4, 09" in the column headers.  AR 222-31.  These documents do not indicate where each person worked.

- A copy of "Employer's Quarterly Wage List" submitted to the Utah Department of Workforce Services for the quarter ending September 30, 2009, listing only the 192 Tooele address.  AR 234-35.[12]

- An undated, unsigned page with two lists of employees indicating the "Locations at where [sic] the following employees were working" on September 10 and September 30, 2009.  On each list, the same three employees -- Calleen Davis, Stan Raass, and Telesia Raass -- are listed as working at the Provo address.  AR 262.

---

[11]  Although Stan Raass stated that all the employees on the list are full time, the list itself has the handwritten notation "PT" next to the name of one employee, Telesia Raass.  AR 219; see AR 234.

[12]  Although the quarterly wage list has a blank line for a signature and date next to a certification statement, it is not signed or dated.  AR 235.

In summary, of the documents RBI submitted to SBA, only the Provo lease, one quote sheet, and one undated, unsigned list purported to indicate that RBI maintained an office or employees in Provo at the time of offer and award.

On November 23, 2009, SBA conducted a site visit at the Provo office.  Ms. Byerly and Ms. Rael, another SBA Business Development Specialist, reported that the RBI employee at the Provo office, a receptionist, stated that RBI had four employees at the Provo address, three at the 192 Tooele address, and a trailer at Dugway Proving Grounds supporting the three employees at the 192 Tooele address.  The receptionist stated that RBI had been at the Provo location since September 1, 2009, but could not provide further details regarding the 192 Tooele address, including why there were no RBI employees and no RBI sign at the 192 Tooele address.  The receptionist could not furnish a copy of the lease agreement for the 192 Tooele address.  SBA's Business Development Specialists Byerly and Rael concluded:

> If one looks at the totality of circumstances regarding this firm, it is evident that this firm was caught with their principal location not in a HUBZone and is backtracking to get into compliance due to the amount of contracts that the firm has received.  Also due to the protest that was issued about this firm.  Please refer to previous site visits performed and the initial records for further information.

AR 146-47.

On November 24, 2009, SBA dismissed Plaintiff's protest finding that RBI's principal office at the time its offer was submitted and at the time of award was the Provo address.  AR 69-72.  SBA stated:

> Information provided by RBI shows that at the time of offer 1 full time employee performed all of her work at the 445 North University Ave, Provo, UT 84601.  One full time employee performed the majority of his work at the 445 North University Ave, Provo, UT 84601 and the remainder of his time at 887 N 100 E Suite 4, Lehi, UT 84043.  RBI's one part time employee performed 100% of her work at the Provo office.  Seven employees performed the majority of their work at job site locations.  Therefore at the time of offer and at the time of contract award the RBI had two employees who performed the majority of their work at 445 North University Ave, Provo, UT 84601, which is located within a qualified HUBZone.
>
> As noted above, SBA performed site visits of the three office locations.  These visits showed that 887 N 100 E Suite 4, Lehi, UT 84043 was not in use and that no RBI employees were working there at the time of the visit.  While there was a sign for RBI at this location there was not visible furniture or office equipment.  Also the visit to 192 South 100 East, Tooele, UT 84074 found no employees present.  SBA's site visit to 445 North University Ave, Provo, UT 84601 found employees performing their work at the location.  While there was no sign for

RBI at this location, the office did have furniture, equipment and employees [present].

AR 71 (footnote omitted).

Plaintiff timely appealed the dismissal to the SBA's Associate Administrator for Government Contracting and Business Development. On December 9, 2009, the SBA's Associate Administrator affirmed the dismissal of the HUBZone protest in a two-page determination, finding "no clear and significant error in the processing of the protest or . . . failure to consider a significant fact supplied by the protestor." AR 64-65.

On December 23, 2009, Plaintiff filed the instant suit. On December 24, 2009, the Court granted Plaintiff's application for a Temporary Restraining Order ("TRO") prohibiting performance of RBI's contract, and on December 29, 2009, the Government voluntarily agreed that the stop-work order would remain in effect pending the Court's resolution of this protest.[13] Proceedings in this case were delayed while the Government considered, at the Court's request, whether SBA would voluntarily reopen its examination of RBI. Def.'s Status Report & Mot. Enlarg. Time 1, May 14, 2010. Although the Department of Justice relayed the Court's request to SBA, on May 28, 2010, the Government filed a status report, stating "the Small Business Administration has decided not to request a voluntary remand of this case."

## Discussion

## Supplementing the Administrative Record

Where the "omission of extra-record evidence precludes effective judicial review," a court may permit supplementation of the administrative record. Axiom Res. Mgmt. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (internal quotation omitted). It is well established that the administrative record may be supplemented when the agency allegedly failed to consider information relevant to its final decision. Allied Tech. Group, Inc. v. United States, 92 Fed. Cl. 226, 231 (2010) (citing Savantage Fin. Servs., Inc. v. United States, 81 Fed. Cl. 300, 311 (2008)); Totolo/King v. United States, 87 Fed. Cl. 680, 692 (2009); Global Computer Enters. v. United States, 88 Fed. Cl. 52, 62-63, n.14 (2009); see also Kent County, Dela. Levy Court v. U.S. Envtl. Prot. Agency, 963 F.2d 391, 396 (D.C. Cir. 1992) (allowing supplementation of the administrative record with documents the agency should have considered when making its decision); Asarco, Inc. v. U.S. Envtl. Prot. Agency, 616 F.2d 1153, 1160 (9th Cir. 1980) ("The court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters.").

In order to be considered a qualified HUBZone small business concern, a business is required to have its "principal" office located within a HUBZone and to have 35 percent of its

---

[13] The Court issued the TRO orally. TRO Hr'g Tr. 56-63, Dec. 24, 2009. On May 6, 2010, the Court orally denied Defendant's motion to dismiss for lack of standing following an evidentiary hearing. Tr. 88, May 6, 2010.

employees residing in a HUBZone.  15 U.S.C § 632(p)(5)(A)(i)(I)(aa).  A "principal office" is defined as:

> the location where the greatest number of the concern's employees at any one location perform their work.  However, for those concerns whose "primary industry" (see 13 CFR 121.107) is service or construction (see 13 CFR 121.201), the determination of principal office excludes the concern's employees who perform the majority of their work at job-site locations to fulfill specific contract obligations.

13 C.F.R. § 126.103.

Plaintiff seeks to supplement the administrative record with Mr. VanGrimbergen's two affidavits to show that RBI made "material misrepresentations (i.e., false statements)" to the SBA regarding the location of its principal office at the time of offer and award.  Pl.'s Mot. Suppl. AR 2.[14]  Plaintiff alleges that RBI's offer contained a false address and that it has been misrepresenting its HUBZone status since 2002.  Second Am. Compl. ¶¶ 30, 35, 38.

RBI and Defendant argue that the first VanGrimbergen affidavit is irrelevant because it covers a time period prior to September 10, 2009 -- the date of bid submission.  However, RBI itself submitted the Jack's Farm lease to SBA in response to Plaintiff's administrative protest challenging RBI's HUBZone eligibility and relied on the Jack's Farm lease to represent that it was continuously HUBZone-eligible from 2004, until it moved to Provo in September 2009.  In a November 13, 2009 letter to SBA, Stan Raass stated:

> From 2004 until September 2009 our principle [sic] office was located at [Jack's Farm] (documents enclosed) . . . . On September 1, 2009, our central office was located at [the Provo address].

AR 196; see AR 199-215.  Further, RBI represented in its offer that no material change in its principal office had occurred since January 18, 2006, when it was last certified as HUBZone-qualified by SBA.  As such, the location of RBI's principal office between January 18, 2006, and September 10, 2009, the date of its offer, is relevant.

Mr. VanGrimbergen's testimony also cast doubt on RBI's representations to SBA that Jack's Farm had been RBI's principal office.  He testified:

> To the best of my knowledge, no one from Raass Brothers, Inc. ever used the property for any purpose. This property is known as "Jack's farm."  It is a field with two garages on it. There are no offices or other facilities needed for conducting business on a regular basis. Since the property is visible from the

---

[14]  In addition, Plaintiff seeks the deposition of Mr. VanGrimbergen.  Pl.'s Second Mot. Disc. 2.

street, and since I do work there myself on almost every day, I was pretty well aware of which people were using the property and when they were doing so. I would have known had anyone been trying to conduct a business out of the garages. No one did.

VanGrimbergen Aff. ¶ 3, Mar. 17, 2010.  This testimony is relevant to Diversified's allegation that RBI had perpetuated a "HUBZone fraud" on SBA since 2002, and that SBA's processing of Diversified's protest, which failed to ascertain this alleged fraud resulted in "a clear and significant error on SBA's part."  Pl.'s Second Am. Compl. ¶ 30.

Whether RBI had misrepresented its principal place of business to SBA on prior HUBZone contracts is also relevant to RBI's status as a responsible contractor.  There is no responsibility determination for RBI in the record.  See Tr. 6-7, Mar. 24, 2010; see also Second Am. Compl. ¶¶ 16, 17, 30, 35, 38.  "[A]gencies are charged with the task of awarding contracts only to 'responsible bidders.'"  John C. Grimberg Co. v. United States, 185 F.3d 1297, 1301 (Fed. Cir. 1999); see also 48 C.F.R. § 9.103(a).  General standards for responsible bidders, including having a satisfactory record of integrity and business ethics, "are prescribed by regulation and apply to all contractors."  Grimberg, 185 F.3d at 1301; 48 C.F.R. § 9.104-1(d).

RBI claims that the first VanGrimbergen affidavit is unreliable because it was obtained under duress in that Plaintiff's counsel intimidated Mr. VanGrimbergen by falsely representing that a criminal fraud investigation was ongoing.  Interv.-Def.'s Am. Resp. to Pl's Mot. Suppl. AR 4-5, Ex. 3; Def.'s Opp'n to Pl.'s Mot. Suppl. AR 5.  In response, Mr. VanGrimbergen executed a second affidavit asserting that he signed the first affidavit willingly, while represented by counsel, and not under duress.  VanGrimbergen Aff. ¶¶ 3-6, Apr. 12, 2010.  Given the controversy surrounding the procuring of Mr. VanGrimbergen's affidavits, the Court concludes that these affidavits are not proper vehicles for supplementing the administrative record.  Rather, all counsel should be afforded an opportunity to depose Mr. VanGrimbergen on the subject matter of both affidavits.  These affidavits may be used for the limited purpose of facilitating the deposition.  As such, this Court denies Plaintiff's motion to supplement the administrative record with the VanGrimbergen affidavits but grants its request to conduct a deposition of Mr. VanGrimbergen.

**Plaintiff's Remaining Discovery Requests**

Plaintiff also seeks the depositions of the landlords of the Provo office and the Lehi office, and Stan Raass of RBI.  In addition, Plaintiff seeks documents from RBI and the lessors relating to rent payments, proposals, draft leases, and real estate listings, on the Provo, Lehi, and Jack's Farm properties.

A court may authorize discovery in a bid protest "if necessary 'for effective judicial review' or if the existing 'record cannot be trusted.'"  Axiom, 564 F.3d at 1380 (quoting Saratoga Dev. Corp. v. United States, 21 F.3d 445, 457-58 (D.C. Cir. 1994)).  Through discovery in a bid protest, a party may seek "'relevant information that by its very nature would not be

found in an agency record.'"   L-3 Commc'ns. Integrated Sys., L.P. v. United States, 91 Fed. Cl.
347, 354 (2010) (quoting Orion Int'l Techs. v. United States, 60 Fed. Cl. 338, 343 (2004)).

    Plaintiff seeks discovery regarding whether RBI misrepresented its status as a qualified
HUBZone contractor to the agency at the time of its offer and award.  Such information by its
nature would not typically be found in an agency's award record.  Plaintiff also seeks discovery
bearing on whether SBA had sufficient and accurate information to determine RBI's HUBZone
status at that time.  SBA's record here contains a plethora of unexplained inconsistencies
regarding where RBI's principal place of business was at the time of offer and award -- including
a major concern voiced by SBA's own Business Development Specialists who performed the site
visits.  Although the parties agree that there can only be a single principal office in this context,
the record contains four different addresses which could potentially be considered RBI's
principal office at various times.  In its offer and accompanying documents RBI listed two
addresses -- the first, 192 Tooele, is in a HUBZone, but the second, the Lehi address, is not.[15]
Further, the record contains unanswered questions about whether the 192 Tooele address was
ever used by RBI.  During its site visit to the 192 Tooele address in October 2009, Plaintiff found
no construction company in the building or listed on the sign.  During its site visit of November
5, 2009, SBA found no RBI employees at 192 Tooele and noted that the address was a house
with no sign indicating a construction company.  RBI now asserts that the 192 Tooele address
was a "contingent office location to be used in the event it needed a facility closer to the
Project's location . . . .  At the time of the offer and award, however, this was not its 'principal
office,' nor was it ever represented to be."  Interv.-Def.'s Mot. J. 15-16; see also id. at 3; Interv.-
Def.'s Resp. to Pl.'s Mot J. 6-7; AR 196.  Instead, RBI claims its principal office was at Jack's
Farm until September 1, 2009, and the Provo office thereafter.  However, according to the
administrative record, neither Jack's Farm nor the Provo address was mentioned by RBI in any
filings with SBA or the state of Utah until after Plaintiff lodged its protest arguing that RBI did
not have a principal office at 192 Tooele.  Although SBA visited the Provo address in late
November 2009, and found RBI employees there, it is not clear when RBI first occupied that
office, or whether that was its principal office at the time of offer and award.

    In addition to these uncertainties in the administrative record calling into question the
location of RBI's principal office, there is evidence in the administrative record that SBA itself
prior to and during the offer and award period had serious concerns about RBI's HUBZone
status.  Just over three months prior to offer and award, in May 2009, SBA instituted
decertification proceedings against RBI because it had evidence that RBI was no longer
HUBZone-eligible.  That decertification was "reversed" solely to allow RBI an extension of time
to respond to the proposed decertification letter that RBI claimed it never received.  RBI
apparently never responded, and SBA never acted on the proposed decertification, believing

---

    [15]  While it is true that there is no requirement that the address in an offeror's proposal be
its principal office, the fact that RBI's proposal listed two offices, neither of which it later
claimed was its principal office at the time of its offer, provided reason for inquiry.  In addition,
the office SBA later found to be RBI's principal office at the time of its offer, the Provo office,
was never mentioned by RBI in any filings of record with SBA or the state of Utah until two
months after offer and award.

Plaintiff's protest superceded the decertification proceeding.  SBA concluded that the protest process should trump its decertification process apparently to avoid duplicative work.  However, once the protest was dismissed, SBA never reopened its decertification proceeding to address the concerns voiced by its own Business Development Specialists who performed the RBI site visits.  These specialists concluded: "it is evident that this firm [RBI] was caught with [its] principal location not in a HUBZone and is backtracking to get into compliance due to the amount of contracts that this firm has received."  AR 147.  There is no indication in the record that SBA considered this concern in dismissing the protest.  In short, the record as it currently exists is in dire need of clarification.

Defendant argues that the requested discovery would be "irrelevant to the contract award in this case and would not support a finding that the award violated any statute or regulation."  Def.'s Resp. to Pl.'s First Mot. Disc. 10.  The premise of this argument is Defendant's belief that even if Plaintiff could establish that RBI's principal office was not in Provo at the time of RBI's offer and award, this would not affect the procurement at issue in this litigation -- it would affect only future procurements.  Id.  (citing 48 C.F.R. § 19.306(k)).  It is true that § 19.306(k) of the Federal Acquisition Regulation provides that "[t]he SBA decision, if received before award, will apply to the pending acquisition.  SBA rulings received after award will not apply to that acquisition."  From this Defendant argues:

> the applicable regulations clearly contemplate that, on occasion, a contractor that self-reports as a HUBZone [small business concern] may sometimes be disqualified by the SBA.  If the disqualification occurs post contract award, however, that award will not be disturbed; the disqualified contractor would only be ineligible for future awards.

Def.'s Resp. to Pl.'s First Mot. Disc. 10.

In essence, the Government argues that even if SBA were to conclude that the awardee were not HUBZone-eligible, it nonetheless could perform a $65 million contract obtained under false pretenses simply due to the happenstance that SBA did not issue its determination on the protest until after award.  Allowing a noncompliant entity to perform this HUBZone set-aside contract would contravene both the terms of the solicitation and the statutory mandate of the HUBZone set-aside program.  Such an illegal award would run afoul of both the Small Business Reauthorization Act of 1997, Pub. L. No. 105-135, § 602(b)(1)(B), 111 Stat. 2592, 2627 (codified as amended at 15 U.S.C. § 657a),[16] and the Competition in Contracting Act, Pub. L. No. 98-369, § 2723(b), 98 Stat. 494, 1191 (1984) (codified as amended at 10 U.S.C. § 2305).[17]

---

[16]   "Notwithstanding any other provision of law . . . . (B) a contract opportunity shall be awarded pursuant to this section on the basis of competition restricted to qualified HUBZone small business concerns if the contracting officer has a reasonable expectation that not less than 2 qualified HUBZone small business concerns will submit offers and that the award can be made at a fair market price."  15 U.S.C. § 657a(b)(2) (emphasis added).

[17]   See 10 U.S.C. § 2305(b)(1) (requiring that contract award be based solely on the factors specified in the solicitation).

In addition, there is a serious question as to whether the serendipity that permitted SBA to issue its decision on RBI's HUBZone status post award should have occurred here. SBA's own Business Development Specialists instituted decertification proceedings over three months before award. SBA granted RBI extensions of time, which caused the decertification to be delayed until after award. Then, SBA pulled the plug on the decertification without finishing that examination when the protest was being considered, but never revisited that process when the protest was dismissed. Under the circumstances, the timing of SBA's dismissal of the protest is neither reason to deny discovery nor grounds for perpetuating what may have been an illegal award.

In sum, although this Court does not lightly order discovery in a bid protest, discovery is necessary here to ascertain whether RBI accurately represented its status as a HUBZone small business contractor at the time of offer and award. Deciding this protest "upon an AR which does not reflect what actually transpired would perpetuate error" and prevent effective judicial review. AshBritt, Inc. v. United States, 87 Fed. Cl. 344, 366 (2009) (citing Axiom, 564 F.3d at 1381). Where, as here, there is reason to believe an awardee may not be HUBZone compliant, it is appropriate to permit a litigant to test the accuracy of the awardee's self-certification to ensure that award has been made to a qualified entity. Cf. Klinge Corp. v. United States, 82 Fed. Cl. 127, 135 (2008) (citing Leisure-Lift, Inc., 2003 B-291878.3, B-292448.2, 2003 U.S. Comp. Gen. LEXIS 178, at *19 (Comp. Gen. 2003) (When prior to an award, the agency has reason to believe that a firm will not provide Buy America Act compliant products, the agency should go beyond a firm's representation of compliance.)). In addition, this discovery may shed light on whether SBA acted rationally when it determined Provo had been RBI's principal office in September 2009, based on unverified self-serving documents and a site visit conducted two months later. The discovery may also bear on whether SBA acted rationally when it never reopened its program examination of RBI to address the concerns of its own employees about RBI's HUBZone status.

Plaintiff's requested discovery is modest under the circumstances. Plaintiff seeks the deposition of a third-party witness, Gary Winterton, the landlord of the Provo office, and documents relating to the rental and leasing of this property. Plaintiff suggests that such discovery is warranted because it has reason to believe that the Provo lease -- the property SBA found to be RBI's principal place of business at the time of offer and award -- like the Jack's Farm lease, was not signed on the date the document bears.[18] Plaintiff bases this allegation on the affidavit of its in-house counsel, Timothy Miguel Willardson, who testified that Mr. Winterton would not acknowledge that the lease "was actually executed on August 28, 2009." Willardson Aff. ¶ 3, Mar. 31, 2010. Mr. Willardson testified:

> I asked Mr. Winterton if the lease was actually executed on August 28, 2009. His reply was evasive, being "They paid rent for that period." I also asked Mr. Winterton if Raass Brothers, Inc. occupied the premises starting September 1, 2009. His reply was, again, "They paid rent for that period."

---

[18]   RBI admits that the Jack's Farm lease was actually signed in November 2009, but backdated to state a date of February 2004. Raass Decl. ¶ 2, Apr. 5, 2010.

Id.

Defendant and RBI argue that the Willardson affidavit is insufficient to provide a basis for discovery in a bid protest case.  Standing alone, the Willardson affidavit might not suffice.  However, the existing record, which is rife with uncertainty as to what location was RBI's principal office at the time of offer and award, provides ample justification for this discovery.

Defendant further argues that Mr. Willardson's affidavit is not part of the Administrative Record and should be stricken from the record because it contains hearsay, opinion, and argument.  While the Willardson affidavit is clearly not part of the Administrative Record and is not being proffered as evidence on the merits, it was properly submitted to the Court in support of Plaintiff's motion for discovery.  As such, this Court declines to strike the affidavit of Mr. Willardson from the Court's record.

Plaintiff also seeks a deposition of either Reed or Lorraine Mellor, the landlords of the property at the Lehi address.  According to Plaintiff, Ms. Mellor stated that RBI had a written lease for the Lehi office, contradicting RBI's statements to SBA that it had "a month to month lease and no documents were signed" for the Lehi office.  Pl.'s Second Mot. Disc. 3; AR 196.  Such testimony -- along with the lease if it exists -- may help to clarify if and when the Lehi address was RBI's principal office.

Finally, Plaintiff seeks a deposition of Stan Raass, Vice President of RBI, to probe where RBI's principal office was located at various pertinent times.  Because this circumstance is not evident from the existing record, the Court grants a deposition.  Plaintiff is also requesting the production of documents from these landlords and RBI relating to the rental, leases or occupancy of those properties.  Because the requested documents will likely shed light on RBI's various lease and occupancy dates, this discovery is granted.

## Conclusion

1.      The Court **DENIES** Plaintiff's motion to supplement the administrative record with the affidavits of Jack VanGrimbergen.  However, such affidavits may be used to facilitate Mr. VanGrimbergen's deposition.

2.      Defendant's motion to strike the affidavit of Timothy Miguel Willardson is **DENIED**.  The affidavit of Mr. Willardson is not accepted into the record as a supplement to the administrative record.  The Court has considered the Willardson affidavit solely to inform its decision on discovery.  As such, the Willardson affidavit is accepted into the Court's record for that limited purpose and will not be considered in connection with the merits of the protest.

3.      The Court **GRANTS** Plaintiff's motions for limited discovery.  The following discovery is authorized:

(a)  a deposition of a corporate representative of Winterton Investments secured via subpoena not to exceed four hours, with counsel dividing the time as follows: two hours for Plaintiff and two hours for Defendant and Intervenor to apportion as they deem appropriate;

15

(b)  a deposition of Stan Raass not to exceed six hours, with counsel dividing the time as follows: three hours for Plaintiff and three hours for Defendant and Intervenor to apportion as they deem appropriate;

(c)  a deposition of Jack VanGrimbergen secured via subpoena not to exceed two hours, with counsel dividing the time as follows: one hour for Plaintiff and one hour for Defendant and Intervenor to apportion as they deem appropriate;

(d)  a deposition of either Reed or Lorraine Mellor secured via subpoena not to exceed one hour with counsel dividing time as follows: 30 minutes for Plaintiff and 30 minutes for Defendant and Intervenor to apportion as they deem appropriate;

(e)  production by RBI of any and all documents and correspondence, by and between Winterton Investments and RBI, related to the Provo property, including, but not limited to, any and all checks (front and back), letters, drafts, leases, proposals, emails, rent payments, contracts or any other documentation related to the Provo address.

(f)  production by RBI of any and all documents and correspondence, by and between Mr. VanGrimbergen and RBI, related to Jack's Farm, including, but not limited to, any and all checks (front and back), letters, drafts, leases, proposals, emails, rent payments, contracts or any other documentation related to the Jack's Farm address.

(g)  production by RBI of any and all documents and correspondence, by and between the Mellors and RBI, related to the Lehi address, including, but not limited to, any and all checks (front and back), letters, drafts, leases, proposals, emails, rent payments, contracts or any other documentation related to the Lehi address.

(h)  RBI shall produce all responsive documents in its possession within 10 calendar days of this decision.

(i)  production by Winterton Investments secured via subpoena of (1) any and all documents and correspondence, by and between Winterton Investments and RBI, related to the Provo property, including, but not limited to, any and all checks (front and back), letters, drafts, leases, proposals, emails, rent payments, contracts or any other documentation related to the Provo address, and (2) any and all real estate listings issued by Winterton Investments for the Provo property from August 2009 through November 2009;

(j)  production by Jack VanGrimbergen secured via subpoena of any and all documents and correspondence, by and between Mr. VanGrimbergen and RBI, related to Jack's Farm, including, but not limited to, any and all checks (front and back), letters, drafts, leases, proposals, emails, rent payments, contracts or any other documentation related to Jack's Farm; and

(k)  production by Reed and Lorraine Mellor secured via subpoena of documents and correspondence, by and between the Mellors and RBI, related to the Lehi address and limited to: leases, contracts, correspondence, drafts, and rent payments from January 2008 through November 2009.

4.     The Court authorizes counsel for Plaintiff to execute, sign and serve subpoenas duces tecum for the above-described depositions (Form 6B in the Appendix to this Court's rules) of all third-party witnesses, requiring depositions and production of documents in accordance with Rule 45 of the Rules of this Court and the accompanying scheduling order.   Absent agreement of the witness, such deposition shall not be conducted at a place more than 100 miles from the place where the deponent resides, is employed, or transacts business.   Failure of any third-party witness to obey such properly served subpoena is punishable by contempt.

5.     The Court's June 21, 2010 scheduling order is vacated.  Counsel shall file a Joint Proposed Schedule governing post-discovery proceedings by September 3, 2010.

6.     Counsel for Defendant is ordered to serve a copy of this Opinion on the Inspector General of the Small Business Administration.

7.     The parties shall file proposed redactions to this Opinion no later than **July 26, 2010.**

It is so ordered.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**